IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CT-3113-D

| | |
|---|---|
| JOHN CLAYTON PHELPS, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>ALVIN WILLIAMS KELLER, JR., et al., )<br>)<br>Defendants. ) | **ORDER** |

On June 22, 2009, John Clayton Phelps ("Phelps" or "plaintiff"), a state inmate incarcerated at Mountain View Correctional Institution ("MVCI"), filed this action pursuant to 42 U.S.C. § 1983 [D.E. 1], along with an application to proceed in forma pauperis [D.E. 2], and additional documentation [D.E. 3]. On October 15, 2009, the court reviewed plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and allowed the action to proceed [D.E. 6], and directed North Carolina Prisoner Legal Services ("NCPLS") to investigate plaintiff's claim [D.E. 7]. On January 13, 2010, NCPLS filed a response to the order of investigation, indicating that it had investigated plaintiff's claim and found that appointment of counsel was not warranted [D.E. 12].

On February 12, 2010, defendants answered the complaint [D.E. 13]. On March 29, 2010, Phelps filed a response to defendants' answer [D.E. 15]. On June 7, 2010, defendants filed a motion for summary judgment [D.E. 20]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Phelps about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 22]. On July 1, 2010, Phelps filed a response in opposition [D.E. 23]. As explained below, defendants' motion for summary judgment [D.E. 20] is granted.

I.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted).

In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

Phelps alleges that, during the time that he was incarcerated at JCI,[1] defendants and other JCI staff subjected him to "cigarette smoking in the dormitory . . . day and night, including the bathroom[,]" despite a policy of the Department of Correction ("DOC") which prohibits smoking in prison buildings. Compl. at 3. "The bathroom is very poorly ventilated and the dorm pollution

---

[1] Phelps was incarcerated at JCI from May 6, 2008, to October 12, 2010. Compl. at 3; N.C. Dep't of Corr., Offender Pub. Info., http://webapps6.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0864381 (last visited Feb. 9, 2011) (indicating transfer from JCI to MVCI on October 12, 2010).

2

is worst with the windows closed." Mem. Opp. Mot. Summ. J. at 5. Phelps is "a diabetic with a high risk for heart attacks and strokes," and contends that cigarette smoke increases his risk for "kidney, eye, and nerve damage . . . . [as well as] increase[d] insulin resistance . . . ." Compl. at 4; Mem. Opp. Mot. Summ. J. at 3. Phelps alleges that he has "had numerous upper respiratory infections and . . . congestion every day" and "suffer[s] from sinus problems, headaches, itching and teary eyes, sore throat, coughing, and nausea from inmates smoking in the dormitory." Compl. at 4.

A prisoner's exposure to second-hand smoke ("ETS") may give rise to an Eighth Amendment claim if he is exposed to unreasonable levels of ETS, and prison authorities are deliberately indifferent to the exposure. See, e.g., Helling v. McKinney, 509 U.S. 25, 35 (1993); Tudor v. Harrison, 195 F. App'x 160, 161 (4th Cir. 2006) (per curiam) (unpublished). However, the Supreme Court in Helling did not mandate smoke-free prisons. See Scott v. Dist. of Columbia, 139 F.3d 940, 942 (D.C. Cir. 1998); Williams v. Howes, No. 1:05-CV-817, 2007 WL 1032365, at *14 (W.D. Mich. Mar. 30, 2007) (unpublished); Mansoori v. Lappin, No. 04-3241-JAR, 2007 WL 401290, at *10 (D. Kan. Feb. 1, 2007) (unpublished). Moreover, a prisoner's exposure to smoke must cause more than mere discomfort or inconvenience. Talal v. White, 403 F.3d 423, 426 (6th Cir. 2005); cf. Ozier v. Berghuis, No. 1:08-CV-1203, 2009 WL 1559786, at *2–3 & n.1 (W.D. Mich. June 1, 2009) (unpublished) (noting that "[t]he cellmate in Helling smoked five packs of cigarettes a day").

As for the objective component of his Eighth Amendment claim, Phelps has failed to show a sufficiently serious level of exposure to ETS. See Griffin v. DeRosa, 153 F. App'x 851, 853 (3rd Cir. 2005) (per curiam) (unpublished) (alleging exposure to ETS from inadequately ventilated restrooms over twenty months failed to show that the prisoner was exposed to unreasonably high

3

levels of ETS contrary to contemporary standards of decency); Ali-X v. Hayman, No. 10-4666 (JBS), 2010 WL 4669666, at *6 (D.N.J. Nov. 8, 2010) (unpublished) ("[A]llegations similar to Plaintiff's allegations that other prisoners smoke in the dayroom or outside near the exercise area have been held insufficient to state a claim under the Eighth Amendment" and collecting cases); Ozier, 2009 WL 1559786, at *2 ("[C]onclusory allegations regarding the level of ETS to which [plaintiff] was exposed fail to support the objective component of an Eighth Amendment claim"). Additionally, Phelps has failed to provide any details regarding his "incidence of cancer" which would allow a reasonable factfinder to draw any connection between the cancer and Phelps's exposure to ETS. See, e.g., Powers v. Snyder, 484 F.3d 929, 932 (7th Cir. 2007) ("[A] prisoner who complains that cigarette smoking amounts to punishment because it is endangering his health must therefore show that his health is indeed endangered").

Phelps also has failed to demonstrate any conduct on the part of any defendant which indicates a subjective, deliberate indifference to Phelps's exposure to unacceptable levels of ETS at JCI. Defendants have submitted the affidavit of JCI Assistant Superintendent Eddie Thompson, as well as both DOC's general policies on smoking in prisons and JCI's "standard operating procedure on tobacco[,]" and note that JCI was converted to a Tobacco-Free Facility in August 2009. Thompson Aff. ¶¶ 3, 7, 9–10 & Exs. A–C, F. Indeed, since September 1, 2005, JCI has "banned the use of all tobacco products in any building." Thompson Aff. ¶ 9 & Ex. D. Although defendants concede that "100 percent compliance with the smoking prohibition cannot be guaranteed[,]" JCI issued 239 disciplinary infractions for unauthorized tobacco use between May 1, 2008, and April 30, 2010. See Thompson Aff. ¶ 10 & Ex. G. A prison's adoption of a no-smoking policy bears heavily on the deliberate indifference inquiry and imperfect enforcement of a non-smoking policy does not

4

rise to the level of deliberate indifference. See, e.g., Helling, 509 U.S. at 36; Talal, 403 F.3d at 427; Ozier, 2009 WL 1559786, at *3.

II.

In sum, the court GRANTS defendants' motion for summary judgment [D.E. 20]. The Clerk of Court is directed to close the case.

SO ORDERED. This  10  day of February 2011.

JAMES C. DEVER III
United States District Judge